**Mrs. Henry C. RICHMOND, as Next Friend of Scott C. Richmond, a minor, Plaintiff,**

**v.**

**Martin KNOWLES, Defendant.**

Superior Court of Delaware, New Castle.

March 24, 1970.

54

John G. Mulford, of Theisen, Lank & Kelleher, Wilmington, for plaintiff.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for defendant.

STIFTEL, President Judge.

A relatively new statute defines the liability of an occupier of land for injuries to a non-paying guest. It provides:

25 Del.Code § 1421.

"No person who comes onto premises occupied by another person as his guest without payment shall have a cause of action for damages against the occupier of the premises unless such accident was intentional on the part of the occupier or was caused by his wilful or wanton disregard of the rights of others." [1]

---

1. This is similar to the automobile guest statute which reads, as follows:

21 Del.Code § 6101.

"Injury to non-paying guest; exceptions as to passengers of public carriers and prospective purchasers of vehicles

(a) No person transported by the owner or operator of a motor vehicle, boat, airplane or other vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident was intentional on the part of such owner or operator, or was caused by his wilful or wanton disregard of the rights of others.

(b) The provisions of subsection (a) of this section shall not relieve a public carrier, or any owner or operator of a motor vehicle while the vehicle is being demonstrated to a prospective purchaser, of responsibility for injuries sustained by a passenger being transported by such public carrier or by such owner or operator."

Defendant, Martin Knowles, filed this motion for summary judgment against the minor plaintiff, Scott Richmond, who was bitten by a dog while on defendant's land. Defendant claims (1) that Scott came on his property as "his guest without payment" and (2) that the record contains no facts which present an issue for the jury of his wanton disregard of the rights of Scott C. Richmond. The following are the facts before the Court:

On November 7, 1967, Scott, then 9 years old, and his younger friend, Timothy McDowell, were riding their bicycles in Concord Manor, near Wilmington, and stopped at defendant's residence where he was chopping wood in his front yard. The boys parked their bicycles and walked onto defendant's front yard. Chained to a tire was one of defendant's dogs, Cinder, a large Doberman Pincher type. Timmy McDowell remembers that defendant told Scott to stay away from the dog. However, Scott does not remember whether defendant warned him to stay away.

After the children had been on the lawn approximately fifteen minutes, a man approached defendant and then they walked to defendant's truck, parked partially on the lawn and partially in the street. Scott came toward the truck from the middle of the front yard and watched the men as they tested the lights on defendant's truck.

While standing there, Scott was bitten by the dog, first on his hip and then on his lip, after he turned around toward the dog. The record is unclear whether the dog dragged the chain and tire to where Scott was standing or whether Scott had walked close enough to the dog to be within the radius of the chain. On this motion, the former must be assumed.

Scott had been on the Knowles property about two years prior to this time with his younger brother. On the day of Scott's injury, Scott says he and Tim came on the land primarily to talk to Mr. Knowles and to ask him if he needed help in loading the logs onto the truck. Scott says that Mr. Knowles was asked if he needed help in putting the logs onto his truck and that he replied in the affirmative. There is some language which suggests that Tim had said to Scott something about being paid.[2]

The owner of a vicious dog, having knowledge of its dangerous propensities, is bound to keep him secure at his peril and if anyone, without fault on his part, is injured by the animal, the owner will be liable. If the dog owner's scienter cannot be shown, ordinary negligence may lie. F. Giovannozzi & Sons v. Luciani, 2 Terry 211, 18 A.2d 435, mentioned in 9 N.C.C.A. (N.S.) 768, 769; 17 A.L.R.2d 459, 463–464;[3] see, also, Duffy

2. Difficult to understand these remarks. Apparently Scott said he learned about Knowles paying other boys 50¢ for helping load logs. Some of the language follows (Tr. p. 11):

"Q. My question is, is that the first time you knew that Bill got paid for helping Mr. Knowles move logs or did you know about it previously?
A. No.
Q. In other words, you just found out about the payment about a week ago?
A. Yes.
Q. So at the time you went on the property you didn't know that the boys two days previously had been paid by Mr. Knowles?
A. Well, Tim had an idea, I guess. He said something about being paid, but I don't—

Q. You didn't know anything about it?
A. Yes."

3. This case was cited in the unreported Supreme Court case entitled Indian Trailer Sales v. Lisa Ann Parnell, No. 132, 1969 (Feb. 6, 1970), involving a dog bite of an invitee minor plaintiff as standing for the following:

"The law of this state is that the owner of a vicious dog, having knowledge of its dangerous propensity, is bound to keep the dog secure at his peril, or to warn persons who may be attacked of the danger. F. Giovannozzi & Sons v. Luciani, 2 Terry 211, 18 A.2d 435. For violation of this duty, the owner will be liable to persons injured by the animal, unless contributory negligence is shown."

v. Gebhart, 2 Storey 312, 157 A.2d 585, 586. To the extent that the doctrine in the *Giovannozzi* case conflicts with the standard of conduct owed to a "guest without payment" by a landowner in 25 Del.C. § 1421, the new statute's standard of conduct must prevail. Thus, a person entering on the land of the occupier as a business invitee or paying guest will not be subject to the rule of the statute and the rule of *Giovannozzi* will apply.

### Guest

Whether or not Scott was present on the premises as a "guest without payment" appears from this record to be a disputed question. Some evidence indicates that in times past, defendant had paid neighborhood children for assisting him. Scott stated that he had hoped to be paid for helping to load defendant's wood. True, plaintiff and his friend were not expressly asked by Mr. Knowles to come upon his land. However, there is some evidence to suggest an implied invitation to come upon or remain upon the premises for the benefit of the occupier, Mr. Knowles. In Mumford v. Robinson, Del., 231 A.2d 477, 479, and in Truitt v. Gaines, 3 Cir., 318 F.2d 461, 464, a person was not considered a "guest without payment" if he produced a service which benefited the owner or operator of a motor vehicle. Since the language of § 1421 is the same as the applicable language in the motor vehicle guest statute (21 Del.C. § 6101(a)) the Legislature must have intended the same meaning already given to § 6101(a) by our courts.

There is also some suggestion in the testimony of this case that Scott came upon the land as a result of an implied invitation for the mutual benefit of both him and the landowner. If this be true, Scott would be a "business invitee". See Slovin v. Gauger, Del., 200 A.2d 565, 567; see, also, 1 Stevenson, Negligence in the Atlantic States, § 333. Both Tim's and Mr. Knowles' testimony is to the contrary. They indicate that Scott was a casual visitor on the premises for his own benefit. Thus, if their testimony is true, Scott would fall into the category of a "guest without payment" or a "gratuitous licensee". Maher v. Voss, 7 Terry 418, 84 A.2d 527; Reardon v. Exchange Furniture Store, 7 W.W.Harr. 332, 188 A. 704; Fahey v. Sayer, 9 Terry 457, 106 A.2d 513.

The record is hazy on the issue of benefit to Mr. Knowles or to both him and Scott. If upon clarification of the facts at trial, a mixture of testimony remains on the issue of guest without pay, the jury must decide the issue. Otherwise, the matter is for the Court. At this time, however, on this motion, with facts and inferences contrued most favorably for the plaintiff, a fundamental factual issue is presented.

### Wanton Disregard

Assuming that either the trial court or the jury should conclude that defendant was at the time of his injury a guest without payment, then it must be determined whether or not the occupier's conduct was wanton in violation of 25 Del. C. § 1421.

Scott's mother, Lucy C. Richmond, testified that she knew the dog had bitten someone before. She also said that in talking with an employee of the SPCA and in overhearing his conversation with an unknown man in a telephone call made by him from her home to the dog shelter the morning after the dog bite incident, she got the impression that the dangerous propensities of Cinder were known to certain members of the SPCA. There are inferences in remarks made by Scott's mother that the vicious nature of the dog was known to the defendant, or that he had constructive notice of the dog's dangerous traits. See, Anno: "Social Guest", 79 A.L.R.2d 986, 995, *et seq.*; 17 N.C.C.A. (3d Series) 329, 336, 353. There was also testimony from Scott that Mr. Knowles unnecessarily excited the dog by "sicking" him on the paper

boy. Apparently, the chained dog growled and barked in frustration. Two or three minutes later, Scott was bitten.

 Scott doesn't remember if defendant told him to stay away from the dog. However, if the dog was known by the defendant to be vicious, even if Scott was warned of the danger, a jury issue of wanton conduct is raised by the manner in which the dog was restrained. A jury could determine that the dog dragged the tire to where Scott was standing. Failure to restrain a known vicious animal is a factor which the jury can consider in determining the issue of wanton disregard. Under the facts and circumstances presented, the issue of wanton conduct is properly for the jury.

For the reasons stated herein, defendant's motion is denied.

It is so ordered.